<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | | |
|---|---|---|
| Christopher Welch, | : | CIV. ACTION NO. 15-8745 (RMB) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | OPINION |
| | : | |
| Cape May County Correctional | : | |
| Center et al., | : | |
| | : | |
| Defendants. | : | |

_____

**RENÉE MARIE BUMB**, U.S. District Judge

I.   <u>BACKGROUND</u>

　　Plaintiff is a pre-trial detainee in Cape May Correctional Center in Cape May, New Jersey. He filed a civil rights complaint seeking monetary damages and declaratory and injunctive relief for alleged constitutional violations and state law claims. The Court granted Plaintiff's IFP application, and now reviews Plaintiff's Amended Complaint, as required by 28 U.S.C. § 1915(e)(2)(b) and § 1915A. The Court must dismiss any claims that are: (1) frivolous or malicious; (2) fail to state a claim on which relief may be granted; or (3) seek monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915A.

II.   <u>DISCUSSION</u>

A.   The Amended Complaint

Plaintiff brings this civil action against Cape May County Sheriff Correctional Officers at Cape May County Correctional Facility (John and Jane Does), Warden Donald Lombardo, James Arsenault (counsel for Cape May County), Captain Charles McGill, Lieutenant Robert Campbell, Sheriff Gary Schaffer, Cape May County Correctional Center's contracted healthcare provider (entity) and its employees, including the Health Services Administrator (John or Jane Doe). (ECF No. 1 at 2, ¶¶4-15, ECF No. 6 at 1.) The individuals are sued in their official[1] and individual capacities.

The facts alleged in the Original Complaint (ECF No. 1), incorporated by reference into the Amended Complaint (ECF No. 6), are summarized as follows. Plaintiff was a pre-trial detainee at Cape May County Correctional Facility on May 17, 2015, and remained in detention when he filed this Complaint. In the months of May through

---

[1] "There is no longer a need to bring official-capacity actions against local government officials, for under Monell . . . local government units can be sued directly for damages and injunctive or declaratory relief." Kentucky v. Graham, 473 U.S. 159, 167 n. 14 (1985). Therefore, simply to avoid confusion, the Court will dismiss the claims against Defendants in their official capacities and will instead address Plaintiff's policy and custom claims against the County of Cape May under Monell. See Crump v. Passaic County, Civ. No. 14-cv-2365 (WHW) (CLW), 2015 WL 7761064 at *7 (noting the Third Circuit has affirmed dismissals of official capacity local government defendants to avoid redundancy, possible confusion, and inefficiency) (citing Cuvo v. De Biasi, 169 F. App'x 688, 693 (3d Cir. 2006)).

October 2015, Plaintiff requested formal grievance forms from
correctional officers and the warden. He was told Cape May County
Correctional Center does not give anyone such forms.

Plaintiff wrote to Inmate Services requesting to file a formal
grievance about overcrowding and lack of privacy during medical sick
calls. He received a response that nothing could be done, and he was
told these complaints were "not grievable." Plaintiff also wrote to
staff and/or verbally complained about: (1) mold in the housing
units; (2) overcrowding (three in a cell designed for two) causing
inmates to sleep on the floor inches from urinals; (3) pretrial
detainees being housed with sentenced prisoners; (4) housing units
infested with insects; (5) toilets leaking water; (6) inoperable
toilets causing feces and urine to pile up for days; (7) insufficient
table space, causing inmates to eat their meals sitting on toilets,
and causing inmate fights over the available table seating; (8)
Plaintiff was housed with an inmate who had a known history of
violence; (9) Plaintiff was assigned to a top bunk, without a ladder
or step stool, and he fell and injured his foot and ankle; (10) on
August 6, 2015, Defendant Correctional Officers escorted through the
housing units an inmate who was screaming racial slurs, creating the
potential to incite a race riot; when the inmate was assaulted, all
medical personnel were called to assist; (11) during this incident,

3

Plaintiff had a grand mal seizure, and no medical personnel were available to see him; (12) several days later Plaintiff fell from his upper bunk, and his neck began to hurt; Plaintiff believed he had a doctor's order for a lower bunk due to his seizure disorder but the nursing staff refused to provide the order to the security officers; (13) Cape May County Correctional Center does not provide forms to inmates to resolve disputes, and when inmates verbally complain, they are retaliated against by losing privileges such as the law library and recreation; (13) Plaintiff complained during his entire incarceration about visibly dirty and nonfunctioning air ducts but nothing was done; (14) the housing units contained bacteria and mold, and the ventilation system contained visible dust and bacteria; (15) on August 9, 2015, an inmate who had contagious MRSA was escorted through the General Population Unit and housed in Unit 6 with non-infected inmates.

In the Amended Complaint, Plaintiff alleged further acts of retaliation including the disappearance of Plaintiff's personal hygiene items; the disappearance of Plaintiff's legal documents; Plaintiff was transferred to the Special Housing Unit-Protective Custody Segregation; and his request to attend a special church service was denied. (ECF No. 6 at 2-7.)

B.   Standard of Review

4

A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (quoting Twombly, 550 U.S. at 556.)

"[A] court must accept as true all of the allegations contained in a complaint." Id. A court need not accept legal conclusions as true. Id. Legal conclusions, together with threadbare recitals of the elements of a cause of action, do not suffice to state a claim. Id. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. If a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the

amendment. <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002).

### C.   <u>HIPAA Claim</u>

Plaintiff alleged that when sick calls are conducted correctional officers stand inches away from the doctor and patient, in violation of patient privacy under the Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S. § 1320. (<u>Id.</u> at 9, ¶56.) "The ability to bring an enforcement action to remedy HIPAA violations, and ensure that a healthcare provider is HIPAA compliant, lies within the exclusive province of the Secretary of Health and Human Services, not the hands of private citizens." <u>Polanco v. Omnicell, Inc.</u>, 988 F.Supp.2d 451, 469 (D.N.J. Dec. 26, 2013) (citing <u>Acara v. Banks</u>, 470 F.3d 569, 571 (5th Cir. 2006)). Therefore, the Court will dismiss Plaintiff's HIPAA claim with prejudice.

### D.   <u>Claims Under 42 U.S.C. § 1983</u>

42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

"To state a claim under § 1983, a plaintiff must allege a violation of a right secured by the Constitution or laws of the United States and, must show that the alleged deprivation was committed or caused by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988).

### 1.  The "More-Specific Provision Rule"

"[I]f a constitutional claim is covered by a specific constitutional provision, such as the Fourth or Eighth Amendment, the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process. U.S. v. Lanier, 520 U.S. 259, 272 n. 7 (1997) (citing Graham v. Connor, 490 U.S. 386, 394 (1989)); Betts v. New Castle Youth Development Center, 621 F.3d 249, 261 n. 10 (3d Cir. 2010) (adopting more-specific provision rule). Therefore, where Plaintiff generally alleges that Defendants' misconduct violated multiple provisions of the United States Constitution, including the Due Process Clause of the Fourteenth Amendment, this Court will apply the standard appropriate to the more specific constitutional provision. (See Amended Compl., ECF No. 1 at 9-10, ¶¶51-55, and ECF No. 6 at 8, Counts 14-18.)

### 2.   No Constitutional Right to a Grievance Procedure

Plaintiff alleged:

> [D]ue to the systematic failure, [from
> overcrowding] . . . Cape May County Correctional
> Center becomes overwhelmed with the verbal &
> written complaints done by request to staff, and
> that these complaints can not even get addressed
> at all, conforming to the requirements
> necessary by the United States and the New
> Jersey Constitution(s). Plaintiff asserts that
> in most cases, the complaints issues will just
> be flat out ignored and not addressed at all,
> due to the defendants being overwhelmed with
> other administrative duties.

(ECF No. 1 at 8, ¶46.) There is no constitutional right to a grievance procedure. Fears v. Beard, 532 F. App'x 78, 81 (3d Cir. 2013) (dismissing claims against defendants based solely on their involvement in the administrative grievance process.) Plaintiff's constitutional claims regarding the unavailability of a grievance procedure will be dismissed with prejudice. His underlying claims regarding the conditions he complained of will be addressed.

### 3.   Eighth Amendment Claims

"The Eighth Amendment's Cruel and Unusual Punishments Clause does not apply until 'after sentence and conviction.'" Hubbard v. Taylor, 399 F.3d 150, 164 (3d Cir. 2005) (quoting Graham v. Connor, 490 U.S. 386, 392 n.6 (1989)). The Supreme Court, in Bell v. Wolfish, 441 U.S. 520 (1979), distinguished between pretrial detainees' protection from "punishment" under the Fourteenth Amendment and the convicted inmate's protection from cruel and unusual punishment under the Eighth Amendment. Hubbard, 399 F.3d at 164. Pretrial

restraints on liberty that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute punishment in violation of the Due Process Clause. Bell, 441 U.S. 520, 540 (1979).

"[I]n addition to ensuring the detainees' presence at trial, the effective management of the detention facility once the individual is confined is a valid objective that may justify imposition of conditions and restrictions of pretrial detention and dispel any inference that such restrictions are intended as punishment." Id. at 540. "[I]n the absence of an expressed intent to punish, a pretrial detainee can nevertheless prevail by showing that the actions are not 'rationally related to a legitimate nonpunitive governmental purpose" or that the actions 'appear excessive in relation to that purpose.'" Kingsley v. Hendrickson, 135 S.Ct. 2466, 2473 (2015) (quoting Bell, at 561.) "The Bell Court applied this latter objective standard to evaluate a variety of prison conditions. . ." Id. Therefore, Plaintiff's Eighth Amendment claims will be addressed under the Due Process Clause of the Fourteenth Amendment.

> 4.   Conditions of Confinement Claims under the Fourteenth Amendment Due Process Clause

The Court will analyze whether each of Plaintiff's Due Process Claims shows that the actions of Defendants were either performed

9

with an express intent to punish, or if not, whether the actions were rationally related to a legitimate nonpunitive governmental purpose or whether the actions appear excessive in relation to that purpose. Kingsley, 135 S.Ct. at 2473. The Court will also determine whether Plaintiff sufficiently alleged an individual defendant's personal involvement in the unconstitutional conduct.

a. Overcrowding as a threat to inmate health

Plaintiff complains of conditions that relate to overcrowding and pose a threat to inmates' health including: (1) housing three inmates to a cell built for two, forcing one inmate to sleep on the floor near the urinal; (2) insufficient medical staff to provide care to inmates; (3) insufficient tables for eating, forcing some inmates to eat sitting on toilets; and (4) housing and/or allowing an inmate with contagious MRSA in the general population. Plaintiff does not allege that any of these conditions were created with the express intent to punish him. On the face of the Amended Complaint, it cannot be determined whether the actions or inaction creating these conditions were rationally related to a legitimate nonpunitive governmental purpose or whether the actions appear excessive in relation to that purpose.

Plaintiff alleged Warden Donald Lombardo is liable, in his individual capacity, because he "is legally responsible for the

10

operations of Cape May County Correctional Center," (ECF No. 1 at 2, ¶8), and he was made aware of the conditions but failed to act. (ECF No. 1 at 5, ¶26).[2] "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations.")) A.M. v. Luzerne Cnty. Juvenile Det. Ctr., 372 F.3d 572, 586 (3d Cir. 2004). Plaintiff's claims against Warden Lombardo will be allowed to proceed because he alleged knowledge of and acquiescence in unconstitutional conditions of confinement.

Plaintiff also seeks to hold liable "Defendant Health Services Administrator Jane/John Doe" whom Plaintiff alleges is "in charge of the medical department. She/He is legally responsible for the operations of Cape May County Correctional Center and for the welfare of all the Pre-Trial Detainees/Inmates in that facility receiving treatment from the medical department within Cape May County Correctional Facility."

A government contractor may be liable where "no rule has been announced as policy but federal law has been violated by an act of the policymaker itself" or "'the policymaker has failed to act

---

[2] Plaintiff's overcrowding claims are not properly brought against any of the John and Jane Doe Sheriff Defendants because Plaintiff has not alleged how these Defendants are personally involved in the overcrowding conditions.

affirmatively at all, [though] the need to take some action to control the agents of the government 'is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to that need.''" <u>Natale v. Camden County Corr. Facility</u>, 318 F.3d 575, 584 (3d Cir. 2003) (quoting <u>Board of County Comn'rs of Bryan County, Okl. v. Brown</u>, 520 U.S. 397, 417 (1997)) (quoting <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 390 (1989)). Plaintiff's claims of insufficient medical staff to provide care to inmates, and housing contagious inmates who have MRSA with other inmates may proceed against the yet to be identified "Cape May County Correctional Center Healthcare Provider/Contractor."

Plaintiff's conditions of confinement claims based on overcrowding posing a threat to inmate health may also proceed against the County of Cape May based on Plaintiff's allegation that the overcrowding conditions have lasted for years. <u>See</u> <u>Duran v. Merline</u>, 923 F.Supp.2d 702, 717 (D.N.J. Feb. 8, 2013) ("The Third Circuit has recognized that such long-standing conditions of confinement constituted a city "custom or usage" for <u>Monell</u> purposes") (citing <u>Anela v. City of Wildwood</u>, 790 F.2d 1063, 1069 (3d Cir. 1988)).

b.   Sanitation Claims

Plaintiff also alleged that the following unsanitary conditions violated the Fourteenth Amendment prohibition on punishment of pre-trial detainees: mold, inoperable toilets, bacteria, dirty air ducts, insect infestation, and sleeping on the floor near urinals. Plaintiff alleged that he suffered respiratory problems from the mold (ECF No. 1 at 5, ¶24) and bug bites from the infestation. (Id. at ¶25.)

Liberally construing these claims, the Court finds that Plaintiff has alleged a Fourteenth Amendment claim against Cape May County, based on its policies and customs, and against Warden Lombardo in his individual capacity. See Hubbard v. Taylor, 399 F.3d 150, 160 ("we must further inquire as to whether these conditions 'cause [inmates] to endure [such] genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the [legitimate] purposes assigned to them.'" (quoting Union County Jail Inmates v. DiBuono, 713 F.3d 984, 992)). The question of whether given conditions constitute punishment must consider the totality of circumstances within an institution. Id.

c. Safety Claims

Plaintiff alleges that the County's policies and practices result in conditions of confinement that place inmates' safety at risk. These conditions include housing violent and nonviolent offenders together; having an insufficient number of tables for inmates to eat, causing inmates to fight; subjecting inmates to risk of a race riot; and assigning inmates to top bunks without providing a ladder or step stool, which caused fights between inmates in the upper and lower bunks, and caused injuries when inmates fell trying to get onto the top bunk.

Like his sanitation claims, Plaintiff alleged these conditions result from the execution of a policy of the County of Cape May and the conditions were brought to the attention of Warden Lombardo but he did nothing. Therefore, these claims may proceed against the County of Cape May and Warden Lombardo in his personal capacity. See Stevenson v. Carroll, 495 F.3d 62, 68 (3d Cir. 2007) (where pretrial detainees alleged conditions of confinement claims under the Due Process Clause, the District Court erred by granting motion to dismiss where it could not make an objective inquiry into the severity of the deprivations or a subjective inquiry into the mental state of the officials.)

     5.   <u>Inadequate Medical Care under the Fourteenth Amendment Due Process Clause</u>

14

Plaintiff alleged the personal involvement of two defendants in the failure to provide him with medical treatment, the sheriff correctional officer whom he asked for medical attention after his grand mal seizure on June 23, 2015, and the nurses who failed to respond to his request for proof of a doctor-ordered bottom bunk. Pretrial detainees' claims of inadequate medical care are analyzed under the Eighth Amendment standard governing such claims. Montgomery v. Aparatis Dist. Co., 607 F. App'x 184, 187 (3d Cir. 2015) (citing Natale, 318 F.3d at 581). "Delay or denial of medical care violates the Eighth Amendment where defendants are deliberately indifferent to a prisoner's serious medical need." Id. (citing Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999)). Negligence by governmental actors is insufficient to support a constitutional claim. Id. (citing Daniels v. Williams, 474 U.S. 327, 333 (1986)).

A medical need is serious if it has been diagnosed by a physician as requiring treatment or if it is so obvious that a lay person would recognize the necessity for a doctor's attention. Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (citing West v. Keve, 571 F.2d at 162). "Where prison authorities deny reasonable requests for medical treatment . . . and such denial exposes the inmate 'to undue suffering or the threat of tangible residual injury,' deliberate indifference is manifest." Conchewski

v. Camden County, Civ. Action No. 11-2781 (NLH), 2014 WL 1153779, at *9 (D.N.J. March 21, 2014) (quoting Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted)). Deliberate indifference is also demonstrated "'when . . . prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment.'" Id.

Accepting as true that Plaintiff had a grand mal seizure on June 23, 2015, Plaintiff adequately alleged that he had a serious medical need, obvious to a lay person, which required medical evaluation. Therefore, Plaintiff's inadequate medical care claim will be allowed to proceed against the yet to be identified sheriff correctional officer whom Plaintiff asked for medical attention when he had a grand mal seizure on June 23, 2015. The claim may also proceed against any nurse whom Plaintiff can identify who denied his request to provide evidence of his doctor's order for a lower bunk, assuming that such a doctor's order exists.

      6.   Retaliation in Violation of First Amendment Right to Redress of Grievances

In support of his First Amendment retaliation claims, Plaintiff alleged that since he arrived at Cape May County Correctional Facility he continually complained about the conditions of confinement. He claims he was retaliated against by (1) denying him

16

recreation time; (2) denying use of the law library; (3) denying proper medical treatment, (4) that his personal property, including clippers and razors, disappeared; and (5) that his mail was tampered with. (ECF No. 6 at 2.)

To state a cognizable retaliation claim under the First Amendment a prisoner must show: (1) constitutionally protected conduct; (2) an adverse action by prison officials sufficient to deter a person of ordinary firmness from the exercise of constitutional rights and the adverse action; and (3) a causal link between the exercise of a constitutional rights and the adverse action. DeFranco v. Wolfe, 387 F. App'x 147, 154 (3d Cir. 2010).

The act of filing a prison grievance, which Plaintiff alleged he repeatedly attempted to do, is constitutionally protected by the First Amendment. Robinson v. Taylor, 204 F. App'x 155, 157 (3d Cir. 2010). However, the disappearance of Plaintiff's nail clippers and razor for several weeks are insufficient actions to deter a person of ordinary firmness from the exercise of his constitutional rights. Therefore, those claims will be dismissed with prejudice.

Plaintiff did not allege how his mail was tampered with, nor did he describe any of the circumstances surrounding the denial of recreation time, law library use or the denial of proper medical treatment. On the face of the Amended Complaint, the Court cannot

determine whether these actions were sufficiently adverse to deter a person of ordinary firmness from engaging in protected activity.

Furthermore, Plaintiff does not allege the personal involvement of any defendant in these claims nor does he establish a causal connection between the protected activity of filing grievances and these particular retaliatory acts. See Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007) ("To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory actions, or (2) a pattern of antagonism coupled with timing to establish a causal link.") Therefore, the retaliation claims based on mail tampering, denial of recreation time, denial of law library time, and denial of proper medical treatment will be dismissed without prejudice.

Plaintiff also alleged he was retaliated against by being moved from general population housing to Special Housing Unit Protective Custody Segregation ("PC") from November 17, 2015 to November 26, 2015. (ECF No. 6 at 2.) When he was transferred, numerous of his legal documents were missing. (Id.) On November 26, 2015, Plaintiff alleged that the following incident occurred:

> On 11/26/2015 plaintiff spoke with Captain Mc'Gill, and requested verbally that he be removed from 'PC'. Mc'Gill's response was "If you knock off all this bullshit off with the

18

> grievances, the faxes, the letters by U.S. Mail,
> and by filing civil claims, then I'll remove you
> right now! Plus, I'm not the only one that has
> something to do with this. You pissed off Cape
> May County Counsel James Arsenault, Gary
> Schaffer, and Warden Lombardo." Plaintiff
> responded, "Captain, I don't need to be here!"
> Captain responded, "I know that and so does
> everyone else. We did it to humiliate you to
> other Inmates/Pretrial Detainees. You just need
> to knock the bullshit off! Hopefully, the bogus
> misconduct I got my officer to give you will
> prove to you I'm not the one to play games with.

Plaintiff alleged that twenty minutes after this incident, he was moved back to the general population unit.

In Bistrian v. Levi, the Third Circuit noted that "whether placement in the SHU was 'sufficient to deter a person of ordinary firmness from exercising his constitutional rights' is an objective inquiry and ultimately a question of fact." 696 F.3d 352, 376 (3d Cir. 2012) (quoting Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001) and citing Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). In Allah and Bistrian, the Third Circuit found that administrative segregation resulting in reduced access to phone calls, commissary, recreation, cell confinement for all but five hours per week, no access to rehabilitative programs, and inadequate access to legal research materials were sufficient to deter a person of ordinary firmness from exercising his First Amendment rights. Bistrian, 696 F.3d at 376 (quoting Allah, 229 F.3d at 225.)

Here, however, Plaintiff has not described the conditions he was subject to in the segregated housing unit. Furthermore, in Bistrian, the plaintiff was subject to indefinite confinement in restrictive housing. Plaintiff alleged he was moved back to the general population after nine days. The Court will deny Plaintiff's retaliation claims without prejudice because he has alleged insufficient facts to plausibly infer that his transfer to the segregated housing unit for nine days would deter a person of ordinary firmness from exercising his constitutional rights.

Plaintiff asserted yet another retaliation claim:

> On 12/16/15 930 am Housing Unit 6 inspection when plaintiff asked Lieutenant Campbell why he was not allowed to the Catholic Church service on 12/04/2015 the response was by Lieutenant Campbell, "it was an administrative decision that had to do with James Arsenault, Gary Schaffer, Warden Lombardo, Captain Mc'Gill, and Myself. If you stop pissing people off around here, you'll get what your entitled to, until then your going to have a very ruff stay here!

(ECF No. 6 at 4.) Plaintiff alleged that Bishop Dennis Sullivan intervened on his behalf on December 4, 2015, asking that Plaintiff be allowed to attend the special service, but he was advised Plaintiff could not attend because he was in segregation. (Id.) Plaintiff alleges he was not in segregation that day. (Id.)

Whether denial of the opportunity to attend a church service was an adverse action that would deter an ordinary person from

exercising his constitutional right to petition for redress of grievances is a question of fact that the Court cannot decide at this early stage of the proceeding. Accepting Plaintiff's allegations as true, the Court will allow this retaliation claim to proceed against Lieutenant Campbell, James Arsenault, Sheriff Gary Schaffer, Warden Lombardo and Captain McGill.

7.   First Amendment Access to Courts Claim

In the Amended Complaint, Plaintiff alleged that when he was moved from general population housing to protective custody segregation, numerous of his legal documents, including declarations from witnesses in this matter, witness' addresses, and papers relating to his criminal case were missing. Plaintiff does not allege what he did to seek the return of these documents or whether the loss of the documents caused him to miss any filing deadlines or any other injury related to his court actions.

To bring a viable First Amendment Right of Access to Courts claim, inmates must show direct injury to their access to courts. Reynolds v. Wagner, 128 F.3d 166, 183 (3d Cir. 1999) (citing examples including complaint dismissed for technical requirement or inability to file a complaint in court). Plaintiff has not alleged sufficient facts to meet this standard, and the Court will dismiss this claim without prejudice.

21

8.   Supervisory Liability Claims

In support of his supervisory liability claims, Plaintiff alleged:

> It is the policy and/or custom of Cape May County Correctional Center [3] to inadequately supervise, train, and re-train its Correctional staff, including the defendants in this Original Complaint & Amended Complaint, against a code of silence or "blue code" of Correctional Officers refusing to intervene & taking part in or providing untruthful information when investigated against constitutional violations & other unlawful misconduct, committed by there fellow Correctional Officers involving Inmates/Pre-Trial Detainees, even when they are formally investigated.
>
> As a result of the above described policies and/or customs or the lack thereof, Correctional Officers, Correctional Administrators, Correctional Medical Contractors, and Correctional Medical Contractors Staff, including the defendants in this matter, believed their actions would not be properly monitored by supervising Correctional Officers & Correctional Medical Officials, and that misconduct would not be investigated or sanctioned but was encouraged, and tolerated, as it has been over the past few decades.

(ECF No. 6 at 7.) Plaintiff cited sixteen cases brought in the New Jersey District Court between 1998 and 2014 against Cape May County Correctional Center officials and staff in support of the

---

[3] The Court assumes Plaintiff's intent, in this paragraph, is to state a Monell claim against the County of Cape May, whom he has substituted for the Cape May County Correctional Center as the defendant in this action.

"longstanding history" of cases alleging similar facts to those alleged herein. (Id. at 5-7.)

"A municipality cannot be held liable for the unconstitutional acts of its employees on a theory of respondeat superior." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)). For municipal liability under § 1983, the plaintiff must demonstrate that that a municipal policy or custom was the "moving force" behind the constitutional tort of one of its employees. Id. at 222 (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991) (quoting Polk Cnty v. Dodson, 454 U.S. 312, 326 (1981)).

A plaintiff can establish the existence of a policy by showing that a "decisionmaker possessing final authority to establish municipal policy with respect to the action issue an official statement of policy." Jiminez v. All am. Rathsekller, 503 F.3d 247, 250 (3d Cir. 2007) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986). Alternatively, a plaintiff may establish that a custom exists "when, though not authorized by law, 'such practices of [county] officials are so permanent and well settled; that they operate as law." Id. (quoting Monell, 436 U.S. at 690).

"Where the policy [or custom] 'concerns a failure to train or supervise municipal employees, liability under section 1983 requires

a showing that the failure amounts to 'deliberate indifference' to the rights of persons with who those employees will come into contact." Id. (quoting Carter v. City of Phila., 181 F.3d 339, 257 (3d Cir. 1999) (quoting City of Canton, Ohio v. Harris, 489 U.S. 378, 388 (1989)). Furthermore, "'the deficiency in training [must have] actually caused' the constitutional violation." Id. (quoting Canton, 489 U.S. at 391.)

Here, the alleged failure to train or supervise involves a "code of silence" or "blue code" wherein employees of the correctional facility and its contractors refuse to intervene or outright lie about investigations of constitutional violations. Plaintiff alleged the "code of silence" encouraged the defendants in this matter to violate his constitutional rights because they did not fear repercussions. "[E]vidence which points to a 'code of silence among officers' and a municipality's concomitant refusal to take disciplinary action, can be sufficient to establish a Monell claim." Hellyer v. County of Bucks, Civ. Action No. 10-2724, 2014 WL 413874, (E.D. Pa. Jan. 31, 2014) (quoting Bailey v. Cnty of York, 768 F.2d 503, 507 (3d Cir. 1985)). Accepting Plaintiff's allegations as true, the Court will proceed this Monell claim against the County of Cape May.

E.   New Jersey Constitutional Claims

The Court will allow Plaintiff's New Jersey Constitutional claims, parallel to his federal constitutional claims, to proceed. See generally Garden State Equality v. Dow, 2012 WL 540608 (N.J. Super. Ct. Law Div., Feb. 21, 2012) ("the 'New Jersey Constitution . . . 'may be a source of individual liberties more expansive than those conferred by the Federal Constitution'" (quoting Lewis v. Harris, 188 N.J. 415, 465 (2006))

F.    State Tort Law Claims

Plaintiff generally alleges that the facts in the Amended Complaint establish tort claims under New Jersey law for: (1) Intentional Emotional Distress; (2) Reckless Endangerment; (3) Gross Negligence; (3) and Causing or Risking Catastrophe (ECF No. 1 at 10, Counts 10-13; ECF No. 6 at 22.) Plaintiff alleged that he filed a timely Notice of Claim to Defendants, as required by the New Jersey Tort Claims Act. (ECF No. 1 at 8, ¶48.)

The New Jersey Tort Claims Act, N.J.S.A. 59:8-8 provides in relevant part:

> A claim relating to a cause of action for death or for injury or damage to person or to property shall be presented as provided in this chapter not later than the 90th day after accrual of the cause of action. After the expiration of six months from the date notice of claim is received, the claimant may file suit in an appropriate court of law.

25

"The notice of claim requirement applies to state law tort claims brought in federal court where a plaintiff also alleges federal and state constitutional violations." <u>Peteete v. Asbury Park Police Dep't</u>, Civil Action No. 09-1220 (MLC), 2010 WL 5151238 at *12 (D.N.J. Dec. 13, 2010) (citing <u>Cnty Concrete Corp. v. Town of Roxbury</u>, 442 F.3d 159, 174-75 (3d Cir. 2006)).

Many of the facts alleged in the Amended Complaint occurred less than six months before Plaintiff filed this action on December 17, 2015. Therefore, it is not plausible that Plaintiff waited for "expiration of six months from the date notice of claim is received" to file suit. <u>See</u> <u>Velez v. City of Jersey City</u>, 180 N.J. 284, 290 (2004) (the purposes of the notice requirements include allowing the public entity at least six months for administrative review with the opportunity to settle meritorious claims prior to bringing suit) (citing <u>Beauchamp v. Amedio</u>, 164 N.J. 111, 121-22 (2000)).

For this reason, the Court will dismiss Plaintiff's state tort law claims without prejudice, allowing Plaintiff to amend if he can establish that he waited until the six-month period expired after his Notice(s) of Claim was received before bringing the claims in this suit.

III. <u>CONCLUSION</u>

For the reasons discussed above, in the accompanying Order filed herewith, the Court will dismiss with prejudice Plaintiff's: (1) HIPAA claim; (2) claim that failure to provide a grievance procedure violates the Constitution; and (3) First Amendment retaliation claim based on disappearance of Plaintiff's nail clippers and razor. The Court will dismiss without prejudice Plaintiff's: (1) First Amendment retaliation claims based on mail tampering, denial of recreation time, denial of law library time, and denial of proper medical treatment; (2) First Amendment retaliation claims based on Plaintiff's transfer to the segregated housing unit for nine days; (3) First Amendment Right of Access to Courts claim; and (4) state tort law claims. Plaintiff's remaining claims will be allowed to proceed.


                                        s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **UNITED STATES DISTRICT JUDGE**

Dated: February 19, 2016



27